```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                           JACKSON DIVISION


THOMAS A. ANDERSON AND
GLADYS RUTH ANDERSON                                       PLAINTIFFS


VS.                                      CIVIL ACTION NO. 3:05CV433LA

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                          DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant State Farm Mutual Automobile Insurance Company for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs Thomas A. Anderson and Gladys Ruth Anderson have responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part.

This case presents a question as to the amount of uninsured motorist coverage, if any, available to the Andersons for a September 11, 2003 accident in which Gladys Anderson was injured when a vehicle she was test driving was rear-ended by a vehicle driven by Carl Thomas, an underinsured motorist.  Thomas had $10,000 in liability coverage with AIG Insurance Company which was paid for Anderson's injuries.  The Andersons had automobile insurance with State Farm, which paid uninsured motorist benefits

of $190,000, contending that was the limits of available coverage on two vehicles the Andersons had covered through State Farm.  The Andersons, however, took the position that they had uninsured motorist coverage on four vehicles at the time of the accident, including two vehicles they purchased on the day of the accident.  Accordingly, they filed this lawsuit against State Farm seeking to recover an additional $200,000 in uninsured motorist benefits claimed to be due them.

In its motion, State Farm contends that summary judgment is in order because the facts of record establish beyond dispute that at the time of the accident, plaintiffs owned only two vehicles, a 1997 Nissan King Cab pickup and a 1986 Cadillac Seville, both of which were insured with State Farm, each having $100,000 of uninsured motorist coverage.  According to State Farm, although plaintiffs did purchase two vehicles on the day of the accident, a Nissan Altima and a Chevrolet Lumina, they did not own those vehicles at the time of the accident and thus had no insurable interest in those vehicles at the time of the accident.  State Farm concludes that because plaintiffs had no insurable interest in those two vehicles at the time of the accident, plaintiffs could not have obtained insurance coverage on the vehicles that would have provided coverage at the time of the accident and consequently, plaintiffs did not have uninsured motorist coverage on those vehicles at the time of the accident.  For the reasons

that follow, the court concludes that State Farm's motion should be granted in part and denied in part.

On September 11, 2003, the Andersons went to a car lot rule by Lavell Hawkins d/b/a Hawkins Motors.  Prior to going to the Hawkins lot on the day of the accident, the Andersons owned two vehicles, a 1997 Nissan King Cab driven primarily by Mr. Anderson, and a 1986 Cadillac Seville, which was driven by Mrs. Anderson.  Both of those vehicles were insured under State Farm policies which provided $100,000 each in uninsured motorist coverage.  The plaintiffs were in the market for two vehicles, one for their daughter, and one for Mrs. Anderson.  At the Hawkins lot, plaintiffs were interested in a 1997 Nissan Altima, which they took out for a test drive and decided to buy.  They were subsequently test driving a Chevrolet Lumina when they were rear-ended by Thomas.

It is undisputed that plaintiffs did ultimately purchase both the Nissan Altima and the Chevy Lumina from Hawkins on the day of the accident, and secured coverage for both vehicles with State Farm.  The dispute here is as to whether that coverage was in effect on either or both vehicles at the time of the accident. State Farm insists that while plaintiffs may have expressed an interest in purchasing one or both vehicles prior to the accident and perhaps had begun negotiating terms with Mr. Hawkins, as a matter of undisputed fact, the final deal was not made, the

paperwork was not signed and the money was not paid until after the accident. It further submits that as a matter of law, title to the vehicles did not pass until Hawkins had signed title over to plaintiffs, see Miss. Code Ann. § 63-21-31; and as this was not done until after the accident, plaintiffs did not own the vehicles at the time of the accident, and hence had no insurable interest in the vehicles and could not validly obtain coverage on them. See Aetna Casualty Ins. Co. v. Davidson, 715 F. Supp. 775, 776 (S.D. Miss. 1989) ("Mississippi follows the general rule that in order to be entitled to proceeds from an insurance policy, the purchaser of the policy must have an insurable interest in the property. . . .").

For their part, plaintiffs claim that they had, in fact, purchased the vehicles prior to the accident, and had even made a call to the State Farm agent to secure new insurance policies on both vehicles prior to the accident and been informed by the agent that coverage would be in effect immediately. Plaintiffs submit that the fact that they had not yet exchanged all the paperwork for both vehicles prior to the accident does nothing to detract from the fact that they had purchased the cars and had coverage in effect on both cars when the accident occurred.

As to the law, State Farm is partly correct. Mississippi is a "title" state: By statute, this state does not regard the sale of a motor vehicle as consummated until the certificate of title

4

is properly transferred and delivered to the purchaser.  Until this occurs, the seller is regarded as in possession of legal title to the vehicle.  In this regard, Mississippi Code Annotated § 63-21-31 states in pertinent part:

> (1) If an owner transfers his interest in a vehicle, . . . other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, . . . execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the State Tax Commission prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee.
> * * *
> (5) . . . a transfer by an owner is not effective until the provisions of this section have been complied with.

See also Hicks v. Thomas, 516 So. 2d 1344, 1346 (Miss. 1987) (this statute "accepts certainty of title as our primary value, and provides a simple method for transferring title to motor vehicles -- endorsement and delivery to the transferee of the title certificate").  However, contrary to State Farm's evident assumption, the fact that a party does not have legal title does not necessarily foreclose a conclusion he/she has an insurable interest.

"The general rule in Mississippi . . . is that an insurable interest must exist in an insured when the contract is entered for it to be effective."  Mississippi Farm Bureau Mut. Ins. Co. v. Todd, 492 So. 2d 919, 931 (Miss. 1986) (citing Southeastern Fidelity Insurance Co. v. Gann, 340 So. 2d 429 (Miss. 1976)).  Obviously, a party who holds legal title has the requisite

5

insurable interest. However, the Mississippi Supreme Court has found an insurable interest in property even though legal title was elsewhere where the insured would suffer economic loss if the property was destroyed. In Gann, the court stated as follows:

> [W]e are of the opinion the trial court correctly found Gann had an insurable interest in the property even though the legal title was elsewhere. He was subject to economic loss at the time the policies were issued if the building were destroyed. Liverpool & London & Globe Ins. Co. v. Delaney, 190 Miss. 404, 200 So. 440 (1941). And see Aetna Ins. Co. v. King, 265 So. 2d 716 (Fla. App. 1972); Skaff v. United States Fidelity & Guaranty Co., 215 So. 2d 35 (Fla. App. 1968); and Smith v. Eagle Star Ins. Co., 370 S.W.2d 448 (Tex. 1963), wherein that Court quoted with approval 29 Am.Jur. 781, Insurance, section 438, as follows: 'The principle may be stated generally that *anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. . . .*' (370 S.W.2d at page 450) The reason for the rule requiring an interest in property upon which insurance is sought is to prevent the coverage from becoming a wagering contract contrary to public policy. 4 Appleman, Insurance Law and Practice, § 2121 (1969). There is no evidence before us indicating these policies were obtained contrary to public policy because of the lack of an insurable interest.

Gann, 340 So. 2d at 433-34 (emphasis added).

Turning to the facts, there is clearly a dispute between the parties as to what transpired when, with respect to the subject purchase/sale transaction(s). In her deposition, Gladys Anderson testified that she and her husband had decided to buy the Altima, agreed to terms on that vehicle and had called their insurance company about insuring the Altima *before* they left to test drive the Chevy Lumina. She stated that Mr. Hawkins' wife was preparing

6

the paperwork (including the transfer of title) on the Altima while they were out test driving the Lumina. They came back after test driving the Lumina, and made or "sealed" the deal on the Lumina, and signed all the paperwork on both vehicles.

In his deposition, the seller, Mr. Hawkins, recalled differently that there was not a decision by the Andersons to buy the Altima and then a separate decision to buy the Lumina; rather "it was a two-car deal," a package deal. He stated that he and the Andersons came to terms on the deal *after* the accident, at which time he called his wife and asked her to prepare the paperwork for both vehicles, which she did. The paperwork was signed, and payment made at that time.

Even though they differ in some respects, if either of these versions of the transaction could be accepted as undisputed, the court would likely agree that State Farm was entitled to summary judgment, because according to both Mrs. Anderson's and Mr. Hawkins' testimony, no money was paid or paperwork signed for the purchase/sale of either vehicle until *after* the accident. Were that the case, it would follow that the Andersons had no interest of any sort, legal or equitable, in either vehicle, at the time of the accident, and hence no insurable interest.

However, a different version is offered by Mr. Anderson, one which, if accepted, would support a finding that the Andersons owned the Altima at the time of the accident. In his deposition,

7

Mr. Anderson testified that before leaving to test drive the Lumina, they had completed the paperwork and paid for the Altima; had telephoned State Farm to advise they had purchased the Altima and to request that a new policy be issued on the Altima; had been assured that coverage on the Altima was effective immediately; and had advised the agent they were purchasing a second vehicle, a Lumina, on which they would also need a new policy. He testified further that prior to the accident, he had told Mr. Hawkins that he intended to also buy the Lumina, so that all that was left to be done when they returned to the dealership was to complete the paperwork on the Lumina.[1]

---

[1] State Farm points out that in an April 28, 2004 complaint to the Mississippi Insurance Commission regarding this incident, Thomas Anderson wrote, "while we were on the way back to [Hawkins'] office to pay him for the (2) used cars – we were hit in the rear at a stop sign." State Farm argues that Mr. Anderson's deposition testimony in this case "is not credible in light of the overwhelming weight of the evidence," (including his prior complaint, and his wife's and Mr. Hawkins' testimony), but states that the court need not even weigh the evidence in order to disregard Mr. Anderson's testimony because he cannot create a question of fact for summary judgment purposes by contradicting his own testimony. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (stating "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."); Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4 (1st Cir. 1994) (stating "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). While Mr. Anderson's deposition version does appear inconsistent with the statement in his complaint to the Insurance Commissioner, the former was not a sworn statement, and he was never asked in his deposition about that earlier statement. The court therefore

While it is manifest from the testimony of Mr. Anderson, as it was from that of Mrs. Anderson and Mr. Hawkins, that the Andersons had no interest of any sort in the Lumina at the time of the accident and therefore no insurable interest in that vehicle, the court concludes, on the basis of Mr. Anderson's testimony, that there is a genuine issue of fact as to whether the Andersons had, in fact, purchased the Altima prior to the accident.

State Farm next argues that in any event, the Andersons had only two insured vehicles at the time of the accident since the Andersons purchased the Altima to replace their Cadillac Seville and the Altima was merely insured in place of the Seville. In response, the Andersons insist that they intended to keep both the Seville and the Altima, and to maintain insurance on both, and that when Mr. Anderson contacted State Farm about insuring the Altima (which he did prior to the accident), he specifically asked that a new policy be issued on the Altima.  In light of plaintiffs' testimony in support of their position on this issue, the court concludes that summary judgment is not in order.

State Farm finally argues that at a minimum, the court should grant partial summary judgment as to the issue of bad faith breach of contract because State Farm had legitimate and arguable reasons for denying the plaintiffs an additional $200,000 in

---

declines State Farm's implicit request to disregard Mr. Anderson's deposition testimony, though certainly, he should and no doubt will be called upon at trial for an explanation.

uninsured motorist coverage.  Plaintiffs have not responded to this part of defendant's motion and in the court's opinion, it ought to be granted.  First, State Farm is correct that there is no available uninsured motorist coverage on the Lumina; and even if a jury were to find that the Andersons purchased the Altima before the accident and that the Andersons had requested that the Altima be insured in addition to (rather than in place of) the Cadillac Seville, it is undeniable that there was ample evidence (including Mr. Anderson's complaint to the Insurance Commissioner) leading State Farm to conclude that the Andersons had no insurable interest in the Altima at the time of the accident.  Accordingly, summary judgment will be granted as to plaintiffs' punitive damages claim.

Based on the foregoing, it is ordered that plaintiffs' motion for summary judgment is granted in part and denied in part, as set forth herein.[2]

SO ORDERED this 19th day of September, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[2] The court notes that there is pending a motion by State Farm to strike certain exhibits submitted by plaintiffs in support of their response to the summary judgment motion.  Because the court conclusion herein would not differ, regardless of whether or not the exhibits at issue were considered, the court will deny the motion as moot.